

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-22-2007

# Hall v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2128

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Hall v. Comm Social Security" (2007). *2007 Decisions.* Paper 1581.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1581

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-2128

BARBARA K. HALL,
Petitioner

v.

COMMISSIONER OF SOCIAL SECURITY,
Respondent

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil No. 02-6918
District Judge: The Honorable Cynthia M. Rufe

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 13, 2007

Before: SMITH and FISHER, *Circuit Judges*,
and DIAMOND, *District Judge*[*]

(FILED:  February 22, 2007)

OPINION

DIAMOND, *District Judge*.

---

[*]The Honorable Gustave Diamond, Senior District Judge for the Western District
of Pennsylvania, sitting by designation.

Barbara K. Hall appeals from the order of the District Court adopting the Report and Recommendation of the Magistrate Judge and affirming the decision of the Administrative Law Judge ("ALJ") denying Hall's application for social security disability benefits. Because we write only for the parties who already are familiar with the facts of this case, we will not restate those facts except as necessary for our analysis. For the reasons set forth below, we will reverse and remand for further proceedings.

## I.

This case has had a protracted procedural history. Hall filed her application for disability insurance benefits under Title II of the Social Security Act on September 25, 1997, seeking a closed period of benefits from her alleged onset date of October 16, 1987, to December 31, 1993, her date last insured. Hall's application was denied initially and upon reconsideration by the state agency, moved on to an ALJ hearing, was remanded to the state agency for consideration of a new argument, again was denied, and proceeded to a second hearing, following which it was denied by the ALJ.

Hall appealed the ALJ's denial to the District Court, which remanded the case to the Commissioner for a third ALJ hearing due to an incomplete record. On December 15, 2003, the ALJ issued a decision denying Hall's application, which became the final decision of the Commissioner when the Appeals Council denied Hall's request for review. The District Court adopted the Magistrate Judge's Report and Recommendation and affirmed the final decision of the Commissioner. This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. §1291 over the final decision of the District Court. While our review is plenary, we are "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence" is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

A five-step sequential evaluation process is used to determine whether a claimant is under a disability. 20 C.F.R. §404.1520. The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520(a)(4); *see also Newell v. Comm'r of Social Security*, 347 F.3d 541, 545-46 (3d Cir. 2003). The claimant bears the burden of proof with respect to the first four steps, then the burden shifts to the Commissioner at step five. *Ramirez v.*

*Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

The ALJ found that Hall suffers from the severe impairments of fibromyalgia and interstitial cystitis, but that those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments. The ALJ also found that, although plaintiff is unable to perform her past relevant work, she nevertheless retains the residual functional capacity to perform the "full range of unskilled light work." In light of Hall's residual functional capacity, age, education and work experience, the ALJ applied 20 C.F.R., Appendix 2, Medical-Vocational Rule 202.21, which directs a finding of not disabled for a younger individual with a high school or more education and prior non-transferable skilled or semi-skilled work experience who retains the residual functional capacity for light work. Accordingly, the ALJ determined that plaintiff was not disabled under the Act at any time during the relevant closed time period.

III.

Hall argues that the ALJ offered inadequate reasons for rejecting the opinions of two treating physicians as well as plaintiff's testimony. The District Court found that the ALJ's evaluation of the medical evidence and of plaintiff's testimony was supported by substantial evidence and we agree.

Under the Social Security Regulations and the law of this Circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §404.1527(d)(2). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory

4

diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. *Id*; *Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir. 2001). When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §404.1527(d)(2).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence and adequately explained her assessment of that evidence in her decision. In particular, the ALJ addressed the treating physician opinions of Dr. Kamen and Dr. Whitmore and set forth her rationale for not according those opinions controlling weight, specifically noting internal inconsistencies in various reports and treatment notes from Dr. Kamen as well as other contradictory medical evidence. Upon our review of the record, we agree with the District Court that the ALJ's evaluation of the medical evidence, including the opinions of Hall's treating physicians, is supported by substantial evidence.

Likewise, we are satisfied that the ALJ properly evaluated Hall's subjective complaints of pain and limitations in accordance with the regulations. Allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §404.1529(c), and an ALJ may reject a claimant's subjective testimony if she does not find it credible so long as she explains why she is rejecting the testimony. *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999); SSR 96-7p.

In assessing Hall's credibility, the ALJ considered Hall's subjective complaints,

5

but also considered those complaints in light of the medical evidence, her treatment history and all of the other evidence of record. In doing so, the ALJ concluded that Hall's subjective complaints of totally disabling pain and limitations are inconsistent with the totality of the medical evidence. The ALJ thoroughly explained her credibility finding in her decision and we are in agreement with the District Court that the ALJ's credibility finding is supported by substantial evidence.

IV.

Hall also argues that the ALJ improperly applied the medical-vocational guidelines, or "grids", to direct a finding of not disabled at step five of the sequential evaluation process. Because the ALJ recognized in her decision several nonexertional limitations, specifically, urinary frequency and a restriction to "simple, repetitive tasks" arising from Hall's impairments, the ALJ's reliance on the grids constitutes reversible error under our decision in *Sykes v. Apfel,* 228 F.3d 259 (3d Cir. 2000).

At step five of the sequential evaluation process, the Commissioner bears the burden of showing that the claimant can perform other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520(a)(4)(v). *See also Newell*, 347 F.3d at 546. Residual functional capacity is that which an individual still is able to do despite the limitations[1]

_____

[1] Limitations may be exertional, nonexertional or a combination of both. 20 C.F.R. §1569a(a). Exertional limitations are those that only affect a claimant's ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling). 20 C.F.R. §404.1569a(b). Non-exertional limitations are those that affect

6

caused by her impairments.  20 C.F.R. §404.1545(a)(1); *Fargnoli*, 247 F.3d at 40.

The grids set out various combinations of age, education, work experience and residual functional capacity and direct a finding of disabled or not disabled for each combination.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.  When the four factors in a claimant's case correspond <u>exactly</u> with the four factors set forth in the grids, the ALJ must reach the result the grids reach.  *Sykes*, 228 F.3d at 263; 20 C.F.R. §404.1569 and Subpart P, Appendix 2, §200.00.  However, where the limitations imposed by a claimant's impairments and related symptoms affect the ability to meet both the strength demands and non-strength demands of jobs, the grids will <u>not</u> apply to direct a conclusion as to disability, but will be used solely as a framework to guide the disability decision.  20 C.F.R. §404.1569a(d).

The ALJ found that Hall retains the residual functional capacity to perform the "full range of unskilled light work."  However, in the body of her decision, the ALJ also acknowledged and discussed various *nonexertional* limitations resulting from Hall's impairments, specifically, "urinary frequency of every two to three hours" resulting from interstitial cystitis as well as the ability to perform only "simple, repetitive tasks" due to

---

a claimant's ability to meet job demands other than strength demands.  20 C.F.R. §404.1569a(c).  Examples of non-exertional limitations include: difficulties functioning because of nervousness, anxiety or depression; difficulties in maintaining attention or concentration; difficulties in understanding or remembering detailed instructions; difficulties seeing or hearing; difficulties handling physical features of a work setting, such as dust or fumes; or, difficulties with manipulative or postural functions, such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id.*

distractions from Hall's "somatic preoccupation with pain." Despite her recognition of these nonexertional limitations, the ALJ nevertheless used the grids to direct a finding of not disabled.

The ALJ's use of the grids despite the presence of nonexertional impairments is directly contrary to our holding in *Sykes,* wherein we expressly concluded:

> in the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion).

228 F.3d at 261.

On appeal, the Commissioner does not contest the presence of the foregoing nonexertional impairments but instead attempts to justify the ALJ's use of the grids in spite of their presence. As to "simple, repetitive tasks," the Commissioner argues that the ALJ's residual functional capacity finding actually accommodates this limitation by restricting Hall to *unskilled* light work. However, the Commissioner cites no authority, be it regulation, ruling or case law, supporting the proposition that a limitation to "simple, repetitive tasks" restricts only skilled work but has no effect on an individual's ability to perform unskilled work. Moreover, no vocational expert testimony was received to establish that limiting an individual to "simple, repetitive tasks," does not significantly erode the occupational base for unskilled jobs as well as skilled ones, and no official notice was taken of this fact. On remand, vocational evidence is required to determine

8

whether Hall's limitation to "simple, repetitive tasks" further erodes the occupational base for unskilled light work.[2]

As to urinary frequency, the Commissioner concedes that "a need to frequent a restroom more often than scheduled breaks might be an additional non-exertional limitation." The Commissioner attempts to downplay this "facially appealing" position by suggesting that such a limitation was found to be "not credible." However, the ALJ expressly recognized Hall's "urinary frequency of every two to three hours" but summarily determined, without reference to any vocational evidence, that such frequency "is not so disruptive that it would interfere with major life activities, including work." The ALJ cites no evidence in support of this conclusion, which is precisely the type of determination that we held in *Sykes* that the ALJ cannot make in the absence of rulemaking, vocational testimony or the taking of official notice after providing the claimant an opportunity to counter it.

The record supports a finding that both exertional and nonexertional limitations result from Hall's impairments. Accordingly, the ALJ's use of the grids to direct a

---

[2] On remand, the ALJ should also clarify the "simple, repetitive task" limitation to ensure that the hypothetical to the vocational expert contains all of the limitations arising from Hall's impairments. In *Burns v. Barnhart*, 312 F.2d 113, 123 (3d Cir. 2002), we noted that a limitation restricting Burns to "simple, repetitive one, two-step tasks" was not sufficiently descriptive to convey the deficiencies resulting from Burns' mental impairments, distinguishing *Howard v. Massanari*, 255 F.3d 577 (8th Cir. 2001), in which the court concluded that the phrase "simple, routine, repetitive work" was sufficient to account for the claimant's limitations where that claimant's deficiencies were solely in the areas of "concentration, persistence or pace."

finding of not disabled is contrary to our ruling in *Sykes* and constitutes reversible error. In light of Hall's nonexertional limitations, on remand the ALJ will not be permitted to rely on the grids to dictate a finding of not disabled, but may only use the grids as a framework to guide the disability determination. Instead, the ALJ must seek the advice of a vocational expert, or other similar evidence as outlined in *Sykes*, to aid in the determination of whether jobs exist in the national economy which can be performed by someone of Hall's age, education, work background and residual functional capacity, properly assessed to include the nonexertional limitations resulting from her impairments.[3] *See Sykes,* 228 F.3d at 273.

---

[3] Hall also argues that the ALJ failed to explain adequately her finding that Hall retains the residual functional capacity to perform the "full range of unskilled light work." To the extent that the ALJ failed to include the nonexertional limitations resulting from Hall's impairments in her residual functional capacity finding, we agree that the ALJ's finding is lacking. However, upon review of the record, we do agree with the District Court that the ALJ adequately explained her finding that Hall retains the residual functional capacity to perform the *exertional* requirements for the full range of unskilled light work, and that this finding is supported by substantial evidence in the record. On remand, the ALJ merely should incorporate the appropriate nonexertional impairments into her otherwise sound residual functional capacity finding.